**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DOWNSTREAM ENVIRONMENTAL, L.L.C. | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-05-1865 |
| GULF COAST WASTE DISPOSAL AUTHORITY, *et al.*, | § § § | |
| Defendants. | § § | |

**MEMORANDUM AND OPINION**

Downstream Environmental, L.L.C., which owns and operates a commercial grease and grit trap waste disposal facility in Houston, Texas, sued Gulf Coast Waste Disposal Authority, a governmental agency that operates waste disposal facilities in locations that include Houston, and U.S. Oil Recovery, L.L.P. (USOR), which also provides waste disposal services in the Houston area. Downstream also sued Klaus Genssler, who owns USOR; Ronald Wise, USOR's engineer; and Gregory & Cook, USOR's engineering firm. Defendants filed motions to dismiss, and Downstream filed motions to amend its pleadings.[1] The pending motions are Downstream's motion for leave to file a third amended complaint, (Docket Entry No. 29), USOR's motion to dismiss, (Docket Entry No. 34), and opposition

---

[1] Downstream previously filed two motions to amend pleadings. (Docket Entry Nos. 10, 24). USOR moved to dismiss Downstream's first amended pleadings. (Docket Entry No. 13). On September 9, 2005, this court denied as moot Downstream's first two motions to amend the pleadings and USOR's first motion to dismiss, in light of Downstream's third motion for leave to amend. (Docket Entry No. 32).

1

to the motion for leave to amend, (Docket Entry No. 35), Downstream's motions for partial nonsuit and extension of time, (Docket Entry Nos. 37, 39), and USOR's motion for sanctions against Downstream, (Docket Entry No. 42).   Based on the pleadings, the motions and responses, the record, and the applicable law, this court grants Downstream's motion for partial nonsuit and extension of time; grants USOR's motion to dismiss as to all remaining claims except the federal false advertising claim; denies Downstream's motion for leave to amend except as to the federal false advertising claim; and denies USOR's motion for sanctions.

Downstream's causes of action against Gulf Coast were previously dismissed by stipulation.   USOR's motion to dismiss the federal false advertising claim is converted into a motion for summary judgment.   USOR may supplement the record with respect to that claim no later than July 17, 2006.   Downstream has until July 31, 2006 to respond.

The reasons for these rulings are set out below.

## I.      Background

Downstream describes itself as an "emerging technology" company that uses a proprietary process to dispose of grease and grit trap waste.   Downstream has a permit to dispose of grease and grit trap waste brought to its facilities by third-party grease haulers. Commercial grease and grit trap waste is generated primarily from restaurants, food preparation establishments, and carwashes.   State and municipal law requires that such waste be disposed of at a facility with a specific permit – an MSW Type V permit – issued by the Texas Commission on Environmental Quality (TCEQ).   Grease trap and grit trap is collected

from restaurants and other facilities and hauled by licensed transporters to disposal facilities permitted to dispose of such waste.

In this lawsuit, Downstream sued Gulf Coast Waste Disposal Authority and U.S. Oil Recovery, L.L.P. (USOR), alleging that USOR operates under a contract to use Gulf Coast's waste disposal services, through a pipeline from USOR's facility.  Downstream alleged that although USOR is licensed to dispose of industrial waste, it does not have the permit required to dispose of commercial waste, which includes grease and grit trap waste.  Downstream alleged that USOR is misrepresenting itself as a legal disposer of commercial grease and grit trap waste. Downstream also alleged that USOR improperly disposes of its waste, including by failing to pretreat the waste before placing it into the municipal sanitary sewer and treatment plant and otherwise engaging in illegal dumping.  Downstream alleged that by operating without the necessary permit and disposing of waste illegally, USOR is able to charge lower prices, which has cost Downstream customers, revenues, and other competitive injury.

In its proposed third amended complaint, Downstream asserted causes of action against Gulf Coast and USOR for violating the federal antitrust statutes, alleging that Gulf Coast monopolizes liquid waste disposal in the Houston area and facilitated USOR's involvement in disposing of grease and grit trap waste without the necessary permit and without the proper treatment, damaging Downstream as a legal competitor in the grease and grit trap waste disposal market.  Downstream also alleged that Gulf Coast was grossly negligent in allowing USOR to continue to operate.  Downstream also asserted causes of

3

action against USOR under the federal Racketeer Influenced and Corrupt Organizations Act, alleging that USOR was operating without the necessary permit and illegally disposing of commercial waste, which enabled it to charge lower prices and caused Downstream competitive injury.  Downstream also asserted claims against USOR and USOR's owner, engineer, and engineering firm for copyright and patent infringement, fraud, conversion, and misappropriation, arising out of statements USOR made in a permit application it filed with the TCEQ.  Finally, Downstream asserted a federal statutory claim for false advertising against USOR, arising out of USOR's statements to grease and grit transporters that it has a Texas permit to dispose of grease and grip trap waste.

Downstream moved for leave to file its third amended complaint.  (Docket Entry No. 29).  In response, Gulf Coast moved to dismiss and opposed the motion for leave to amend. (Docket Entry No. 33).  Downstream stipulated to the dismissal of all its claims against Gulf Coast, which this court granted.  (Docket Entry No. 41).

USOR also moved to dismiss and opposed the motion for leave to amend.  (Docket Entry Nos. 34, 35, 36).[2]  In response, Downstream moved to dismiss its claims against USOR and its owner, Genssler, under the antitrust statutes.  (Docket Entry No. 39).  Downstream also moved to dismiss its claims against USOR and Genssler for patent and copyright infringement; USOR had revised the permit application that gave rise to those claims, making them moot.  Downstream also moved to dismiss its claims against USOR's engineer, Ronald

---

[2]  USOR's motion to dismiss and opposition to Downstream's motion for leave to file a third amended pleading was docketed as three separate docket entries.  (Docket Entry Nos. 34, 35, 36).

Wise, and engineering firm, Gregory & Cook Construction, arising from the permit application.  (Docket Entry No. 39).  The motion to dismiss these claims is unopposed and is granted.

Downstream identified its remaining claims against USOR and Genssler as claims for RICO violations under 18 U.S.C. § 1964(c), fraud, false advertising, and "an action for citizen's enforcement of environmental laws."  (Docket Entry Nos. 30, 39).  Downstream filed a response to USOR's motion to dismiss and attached affidavits adding detail to the allegations in the proposed third amended complaint that USOR accepts grease and grit trap waste although it is licensed only for industrial waste disposal; that USOR dumps waste into Gulf Coast's facility without using a pipeline, into the municipal sanitary sewer and treatment plant without pretreatment, into a manhole, and in other illegal locations.  The affidavits also add detail to the allegations in the proposed third amended complaint that USOR has lowered the prices for waste disposal and has represented to Downstream customers and to transporters that it is licensed to accept commercial waste, to Downstream's commercial disadvantage.  Downstream asks this court to consider the affidavits and treat USOR's motion to dismiss as one for summary judgment.  (Docket Entry No. 43).  USOR filed a reply.  (Docket Entry No. 45).  USOR has moved for sanctions under Federal Rule of Civil Procedure 11.  (Docket Entry No. 42).  Downstream has responded.  (Docket Entry No. 44).

Based on the pleadings; the motions, responses, and reply; and the applicable law, this court grants USOR's and Genssler's motion to dismiss and denies Downstream's motion to

amend its pleadings as futile as to the RICO claims, the Clean Water Act claims, and the fraud claims.[3]  The only claim remaining against USOR and Genssler is the federal-law claim for false advertising.  The motion to dismiss that claim will be treated as one for summary judgment.  No later than July 17, 2006, USOR must supplement the record with affidavits or other submissions relating to Downstream's false advertising claim.  Downstream must respond no later than July 31, 2006.  Finally, on the present record, this court denies USOR's motion for sanctions.

## II.      Analysis

### A.      The Standards for Motions to Dismiss and for Leave to Amend

USOR has moved to dismiss under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  A claim may not be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) unless it appears certain that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *See Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 351 (5th Cir. 2003); *Home Builders Ass'n v. Madison, Miss*., 143 F.3d 1006, 1010 (5th Cir. 1998).  A case is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate it.  *Home Builders Ass'n*, 143 F.3d at 1010.  A court may find lack of subject-matter jurisdiction based on the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint

---

[3]  Downstream also moved for an extension of time to respond to USOR's motion to dismiss. (Docket Entry No. 39).  That motion is granted.

supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Clark v. Tarrant County, Tex.*, 798 F.2d 736, 741 (5th Cir. 1986). The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion to dismiss and must show that jurisdiction exists. *Ramming*, 281 F.3d at 161.

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Rule 12(b)(6) dismissal is appropriate if there is no set of facts that could be proven consistent with the complaint allegations that would entitle the plaintiff to relief. *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Under both Rule 12(b)(1) and Rule 12(b)(6), the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff, resolving inferences and doubts in the plaintiff's favor. *In re Supreme Beef Processors, Inc*., 391 F.3d 629, 633 (5th Cir. 2004). To avoid dismissal, however, a court need not accept as true conclusory allegations or unwarranted deductions of fact. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). When a "conclusory allegation" or an "unclear question of law" appears within the factual allegations of the complaint, the court retains discretion to construe that issue against the plaintiff. *See, e.g.*, *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994) ("While the district court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff.").

In considering a Rule 12(b)(6) motion to dismiss, a court must limit itself to the

contents of the pleadings, with an exception.  In *Collins*, 224 F.3d at 498–99, the Fifth Circuit approved the district court's consideration of documents the defendant attached to a motion to dismiss.  The Fifth Circuit made it clear that "such consideration is limited to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim."  *Scanlan*, 343 F.3d at 536 (citing *Collins*, 224 F.3d at 498–99).  Other courts approve the same practice, stating that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *see also Field v. Trump*, 850 F.2d 938, 949 (2d Cir. 1998); *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994).

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is to be converted into a motion for summary judgment under Rule 56 if matters outside the pleading are presented to and accepted by the court.  Either the pleader or the moving party may submit extraneous matters.  When "matters outside the pleadings" are submitted in support of or in opposition to a Rule 12(b)(6) motion to dismiss, Rule 12(b) grants courts discretion to accept and consider those materials, but does not require them to do so.  *See Prager v. LaFaver*, 180 F.3d 1185, 1188–89 (10th Cir. 1999); *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (1969)).  A court exercises this discretion by determining whether the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the

action.  *Id.*

A court's Rule 12(b) obligation is conditional on whether the court accepts materials "outside the pleadings" that are neither referenced in the complaint nor matters of public record that may be judicially noticed.  *See* FED. R. CIV. PROC. 12(b); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).  If the court decides to consider any such extraneous material, then the court must treat the Rule 12(b)(6) motion as a motion for summary judgment under Rule 56.  FED. R. CIV. PROC. 12(b).  By contrast, if the court refuses to consider those materials outside the pleadings, then the Rule 12(b)(6) motion remains intact and may be disposed of on its merits under the appropriate standard of review.

If the court accepts matters outside the pleading and converts the motion to dismiss into one for summary judgment, the court is to give the parties notice of the changed status of the motion and a "reasonable opportunity to present all materials made pertinent to such a motion by Rule 56."  *Festa v. Local 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35 (2d Cir. 1990) (vacated on other grounds).  The key is whether the losing party has been given adequate notice and an opportunity to supplement the record before summary judgment is granted.  *See Clark*, 798 F.2d at 745–46 (5th Cir. 1986) (court's acceptance of material from outside pleadings was sufficient in itself to notify plaintiffs of the possibility of conversion).

In this case, the affidavits that Downstream has submitted are not necessary to resolve the Rule 12(b)(1) or Rule 12(b)(6) motions except as to one of the claims.  This court resolves the motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6) as to all but the false advertising claim without considering the affidavits Downstream has submitted.  As to

the false advertising claim, this court now notifies the parties of the changed status of the motion from a motion to dismiss to one for summary judgment and provides an opportunity to supplement.

Federal Rule of Civil Procedure 15(a) requires leave of the court for a party to file an amended pleading and provides that such leave "shall be freely given when justice so requires."  In deciding whether to grant leave to file an amended pleading, a district court may consider factors such as undue delay; bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party; and futility of amendment.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).  Denial of leave to amend on the basis of futility is "premised . . . on the court's evaluation of the amendment as insufficient to state a claim . . . ."  *Jamieson v. Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).  A denial on this basis "tends to blur the distinction between analysis of the procedural context under Rule 15(a) and analysis of the sufficiency of the complaint under Rule 12(b)(6)."  *Id.* at 1208–09 (citing *Pan-Islamic Trade Corp. v. Exxon*, 632 F.2d 539, 546 (5th Cir. 1980)).  Opinions frequently explicitly equate the futility analysis under Rule 15(a) with the legal sufficiency standard of Rule 12(b)(6).  *See Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) ("In reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion."); *In re Burlington Coat Factory Securities Litigation.*, 114 F.3d 1410, 1434 (3rd Cir. 1997); *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).

10

## B.    The Civil RICO Claim

RICO prohibits certain conduct involving a "pattern of racketeering activity."  18 U.S.C. § 1962.  RICO provides a private right of action to "[a]ny person injured in his business or property by reason of a violation" of the Act's substantive restrictions.  *Id*. § 1964(c).[4]  Downstream alleges a violation of § 1962(c), which makes it illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  *Id.* § 1962(c).  Although Downstream alleged violations of all four subsections of 18 U.S.C. § 1962, it withdrew its claim of investment or acquisition injury under § 1962(a) and stated that it was maintaining its claim under § 1962(c).  (Docket Entry No. 43 at 6).

Downstream's RICO claim under § 1962(c) is precluded by the Supreme Court's recent decision in *Anza v. Ideal Steel Supply Corp*., 126 S. Ct. 1991 (2006).  The Court considered the claim by Ideal, the operator of a steel mill products store, that its principal competitor, National (owned by the Anza brothers), was engaging in an unlawful

---

[4]  Section 1964 states:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

18 U.S.C. § 1964(c).

11

racketeering scheme to gain sales and market share at Ideal's expense by violating the state tax laws and not charging its customers sales taxes.  According to Ideal, National violated RICO § 1962(c) by submitting false tax returns (mail and wire fraud), enabling National to charge lower prices and causing Ideal competitive injury.  National moved to dismiss on the grounds that Ideal had no standing to assert a claim under § 1962(c) and could not state a basis for recovery under that statute.  The court of appeals denied the motion to dismiss and the Supreme Court granted *certiorari*.

The Supreme Court held that as a matter of law, Ideal could not maintain its § 1962(c) claim because it could not plead facts showing that National's RICO violation was the proximate cause of Ideal's injury.  The Court began with its earlier decision in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992), holding that a plaintiff may sue under § 1964(c) only if the alleged RICO violation was the proximate cause of the plaintiff's injury.  The Court applied the principles of *Holmes* to the dispute between two competing businesses.  Taking Ideal's allegations as true, the Court concluded that Ideal could not maintain a RICO claim that it suffered injury as a proximate cause of National's alleged use of a pattern of racketeering activity to conduct its business.  The Court stated that the direct victim of the illegal conduct was the state tax authority, not Ideal, and that the alleged RICO violations did not cause Ideal's injury.  The Court held:

> The proper referent of the proximate-cause analysis is an alleged practice of conducting National's business through a pattern of defrauding the State.  To be sure, Ideal asserts it suffered its own harms when the Anzas failed to charge customers for the applicable sales tax.  The cause of Ideal's asserted harms,

> however, is a set of actions (offering lower prices) entirely distinct from the
> alleged RICO violation (defrauding the State).

126 S.Ct. at 1996.  The Court found no proximate causation, as a matter of law.  *Id.*

In reaching this conclusion, the Court noted that allowing such an indirect form of competitive injury to support a RICO claim would result in severe proof problems.  "The injury Ideal alleges is its own loss of sales resulting from National's decreased prices for cash-paying customers.  National, however, could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud.  Ideal's lost sales could have resulted from factors other than petitioners' alleged acts of fraud."  *Id.* at 1997.  The Court explained that "[b]usinesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices."  *Id.*  The Court summarized its concerns with the attenuated connection between the injury asserted and the alleged RICO violations:

> A court considering the claim would need to begin by calculating the portion
> of National's price drop attributable to the alleged pattern of racketeering
> activity.  It next would have to calculate the portion of Ideal's lost sales
> attributable to the relevant part of the price drop.  The element of proximate
> causation recognized in Holmes is meant to prevent these types of intricate,
> uncertain inquiries from overrunning RICO litigation.  It has particular
> resonance when applied to claims brought by economic competitors, which,
> if left unchecked, could blur the line between RICO and the antitrust laws.

*Id.* at 1997.

The Court's holding precludes Downstream's RICO claim.  Downstream alleged that USOR is disposing of grease and grit trap waste without the necessary permit and by illegal dumping, allowing it to charge lower prices, which caused Downstream competitive injury.

As a result of USOR's illegal disposal operation, Downstream alleged that it suffered "the direct harm of loss of customers and sales, collapse of the market price, and loss of revenue." (Docket Entry No. 43 at ¶ 21).  This is very similar to the RICO claim the Court rejected in *Ideal,* and the reasons the Court identified for rejecting the RICO claim in that case are present in this case as well.

In *Ideal,* the direct victim of the allegedly illegal conduct was not the law-abiding competitor, but the regulatory authority.  In the present case, the direct victim of USOR's alleged regulatory violations is the State of Texas, which issues the MSW Type V permits, and the municipality operating the sewer treatment facilities.  In *Ideal*, the cause of the legal competitor's asserted injuries was a set of actions – offering lower prices – distinct from the alleged RICO violation of failing to charge sales taxes.  As in *Ideal*, the cause of Downstream's asserted injury is that USOR charges lower prices, which is distinct from the alleged RICO violations of operating without a required permit and improperly dumping waste.  Like the plaintiff in *Ideal*, Downstream cannot state a claim under § 1962(c) because it cannot meet the proximate-cause requirement.  "A RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense." 126 S.Ct. at 1998 (citation omitted).

In *Ideal*, the Court also noted that "[t]he requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims."  *Id.* at 1997 (citation omitted). This observation applies to the present case as well.  Downstream accused USOR of violating

14

the Texas permitting requirements and of violating state and federal requirements for

pretreating and disposing of waste.  As in *Ideal*, there are public authorities charged with

enforcing such violations.  As the Court stated in *Ideal*, "[t]here is no need to broaden the

universe of actionable harms to permit RICO suits by parties who have been injured only

indirectly."  *Id.*

The RICO claim is dismissed.  Downstream's motion for leave to amend to assert

such claims is denied.

### C.  The False Advertising Claim

Downstream also alleged a cause of action for false advertising under 15 U.S.C. §

1125.  (Docket Entry No. 30 at ¶¶ 119–22; Docket Entry No. 37 at 2).  Section 1125(a)(1)(B)

provides:

> (1) Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or
> device, or any combination thereof, or any false designation of origin, false or
> misleading description of fact, or false or misleading representation of fact,
> which –
> > . . .
> > (B) in commercial advertising or promotion, misrepresents the
> > nature, characteristics, qualities, or geographic origin of his or
> > her or another person's goods, services, or commercial
> > activities,
>
> shall be liable in a civil action by any person who believes that he or she is or
> is likely to be damaged by such act.

15 U.S.C. § 1125(a).  Although USOR moved to dismiss all of Downstream's claims, it did

not specifically address the federal statutory cause of action for false advertising.  (Docket

Entry No. 34).  USOR instead asserted that it is authorized to receive and process municipal

waste without an MSW Type V permit because it is a permitted transfer station and because it is a recognized recycler.  USOR attached copies of the Texas Administrative Code that addresses transfer stations and recylers.  30 TEX. ADMIN. CODE § 330.4(q), (s).  (Docket Entry No. 45, Ex. B and C).

Downstream has asked this court to consider affidavits describing USOR's representations about its permits and licenses.  USOR has also asked this court to consider information as to its status as a transfer station and recycler.  USOR's motion to dismiss the false advertising claim on the ground that, as a matter of law, it is not required to obtain an MSW V permit and is therefore not falsely advertising its services is appropriately considered as a summary judgment motion.  No later than July 17, 2006, USOR must supplement the record with affidavits or other submissions relating to Downstream's false advertising claim.  Downstream must respond no later than July 31, 2006.

### D.    The Fraud Claim

Downstream asserted a state-law cause of action for fraud.  (Docket Entry No. 30 at ¶¶ 123–24).  In Texas, fraud occurs when: (1) the defendant misrepresented a material fact; (2) the defendant knew the material representation was false or made it recklessly without any knowledge of its truth; (3) the defendant made the false material representation with the intent that it should be acted on by the plaintiff; and (4) the plaintiff justifiably relied on the representation and thereby suffered injury.  *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 566 (5th Cir. 2005) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)); *Formosa Plastics Corp. USA v. Presidio*

*Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

Downstream alleged fraud in its proposed third amended complaint, but only with respect to the USOR permit application that was later withdrawn.  (Docket Entry No. 30 at ¶¶ 123–124).  Downstream only alleged false advertising, not fraud, with respect to its claim that USOR misrepresented to grease and grit trap waste transporters and other third parties that it had the required state permits to accept commercial waste.  (Docket Entry No. 30 at ¶¶ 119–122).  In its response to USOR's motion to dismiss, however, Downstream argued that such representations to third parties, including transporters and potential customers, constituted fraud that caused injury to Downstream in the form of loss of customers, price, and revenue.  (Docket Entry No. 43 at 13–14).  But to establish fraud, Downstream must show that it detrimentally relied on USOR's representations.  Downstream's own allegations and arguments show that USOR's statements to transporters and other third parties were not intended to be relied on by Downstream and were not relied on by Downstream.  To the contrary, Downstream asserts that it recognized the falsity of such statements from the outset. USOR's motion to dismiss Downstream's fraud claims is granted.  Downstream's motion for leave to amend to assert a fraud claim with respect to USOR's representations to potential customers and transporters is denied.

### E.    The Clean Water Act Claim

In its proposed third amended complaint, Downstream alleged that USOR has violated the Clean Water Act, 33 U.S.C. § 1251 *et seq*., as a predicate act for the RICO causes of action.  (Docket Entry No. 30 at ¶ 84).  In its response to USOR's motion to dismiss,

however, Downstream appeared to argue that it intended to assert a separate cause of action based on USOR's alleged Clean Water Act violations, a "citizen's suit" to enforce that Act. (Docket Entry No. 43 at ¶¶ 81–82).  Downstream asserted that USOR violated the Clean Water Act by failing to pretreat grease and grit trap waste before putting it into the municipal sanitary sewer and sewer plant, (Docket Entry No. 30 at ¶¶ 20, 56), and by improperly disposing of such waste, polluting a public watershed, (*Id.* ¶ 20; Docket Entry No. 43 at ¶¶ 83–87).  Downstream alleged that USOR has violated §§ 1311, 1312, 1316, 1317, 1318, 1321(b)(e), and 1345 of the Clean Water Act.  (Docket Entry No. 30 at ¶ 74).

The Clean Water Act states that "any citizen may commence a civil action on his own behalf against any person . . . who is alleged to be in violation of an effluent standard or limitation under this chapter."  33 U.S.C. § 1365(a).[5]  USOR moves to dismiss the Clean

---

[5]  Section 505 provides:

(a) Authorization; Jurisdiction

Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf–
>  (1) against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
>  (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

(b) Notice
No action may be commenced–
>  (1) under subsection (a)(1) of this section–
>  >  (A) prior to sixty days after the plaintiff has given notice

Water Act claim on the ground that Downstream lacks standing.  The lack of standing may be raised under a Rule 12(b)(1) motion to dismiss.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The Act defines a "citizen" with standing to bring a civil action for a violation of the Clean Water Act as "a person or persons having an interest which is or may be adversely affected."  33 U.S.C. § 1365(g).  The Supreme Court recognized in *Middlesex County Sewerage Auth v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 16 (1981), that this grant of standing reaches the limits of Article III, stating that "all persons possessing standing under this Court's decision in *Sierra Club v. Morton*" have standing to sue under the Clean Water Act.  If a Clean Water Act plaintiff meets the constitutional requirements for standing, the statutory threshold is also satisfied.

Article III of the Constitution restricts the federal courts to the adjudication of "cases"

---

of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or (B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.
(2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator,

except that such action may be brought immediately after such notification in the case of an action under this section respecting violation of sections 1316 and 1317(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

33 U.S.C.A. § 1365 (a)–(b).  Downstream alleged that it gave proper notice to all proper parties.

and "controversies." The threshold requirement of standing is "perhaps the most important" condition of justiciability. *Allen v. Wright*, 468 U.S. 737, 750 (1984). The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to make judicial resolution appropriate. *See id.* at 750–51. To meet the constitutional minimum for standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen*, 468 U.S. at 751. This includes three elements: (1) injury-in-fact; (2) traceability; and (3) redressability. *See Lujan*, 504 U.S. at 560–61 (1992). The injury-in-fact prong requires that a plaintiff suffer an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent. *See id.* at 560. The traceability prong means it must be likely that the injury was caused by the challenged conduct. *See id.* The redressability prong entails that it must be likely, and not merely speculative, that a favorable decision will remedy the injury. *See id.* at 561.

Downstream did not allege or identify an aesthetic, recreational, economic, or other legally protected interest in any particular waterway it claimed was affected by USOR's improper discharge and dumping activities. Instead, Downstream alleged that USOR charges lower prices than Downstream by handling the same type of waste as Downstream without the necessary permit and by disposing of the waste improperly, and that as a result Downstream "has lost 30% of its price and a portion of its customer base to [USOR], an illegal competitor." (Docket Entry No. 43 at ¶ 67).

The injury-in-fact requirement precludes those with merely generalized grievances

from bringing suit to vindicate an interest common to the entire public.  *See Lujan*, 504 U.S.

at 575.  A plaintiff must instead suffer an invasion of a legally protected interest that is

"concrete and particularized" before he can bring an action.  *Id*. at 560.  The relevant

showing of injury-in-fact is not injury to the environment but injury to the plaintiff.

"[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the

affected area and are persons 'for whom the aesthetic and recreational values of the area will

be lessened' by the challenged activity." *Laidlaw Envtl. Servs.*, 528 U.S. at 183 (quoting

*Sierra Club*, 405 U.S. at 735).  Downstream alleged economic injury because it is

disadvantaged as a legal disposer of wastes competing with an operator illegally disposing

of wastes.  Downstream did not allege injury as a result of the invasion of a legally protected

interest in the waterways that USOR has allegedly affected by its illegal waste disposal

activities.  Downstream cannot meet the injury-in-fact element of standing.

Nor does Downstream meet the requirement of alleging an injury fairly traceable to

the challenged acts of the defendant.  There must be a causal connection between the injury

and the conduct of which the plaintiff complains.  *Lujan*, 504 U.S. at 560.  The fairly-

traceable component examines the causal connection between the allegedly unlawful conduct

and the alleged injury.  *See Allen*, 468 U.S. at 753 n.19.  "[T]he threshold requirement of

'traceability does not mean that plaintiffs must show to a scientific certainty that defendant's

effluent . . . caused the precise harm suffered by the plaintiffs' in order to establish standing."

*Natural Res. Defense Council v. Sw Marine*, 236 F.3d 985, 995 (9th Cir. 2000) (quoting

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir.

2000) (en banc)).  "To satisfy this requirement, 'rather than pinpointing the origins of particular molecules, a plaintiff must merely show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area of concern.'"  *Id.*  In this case, Downstream has not alleged any plausible connection between the alleged illegal discharges and the competitive harm it has suffered.  Instead, Downstream alleged that USOR's lower prices have caused competitive injury.  In a Clean Water Act case, a plaintiff may show a substantial likelihood that defendant's conduct caused plaintiff's harm by "showing that a defendant has 1) discharged some pollutant in concentrations greater than allowed by its permit 2) into a waterway in which the plaintiffs have an interest that is or may be adversely affected by the pollutant and that 3) this pollutant causes or contributes to the kinds of injuries alleged by the plaintiffs."  *Pub. Interest Research Group of N.J. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3d Cir. 1990).  Downstream has made no such allegations.  It cannot show an injury that is fairly traceable to the challenged action of USOR.

The final standing requirement – redressability – examines the causal connection between the alleged injury and the judicial relief requested.  *See Allen*, 468 U.S. at 753 n.19. Downstream asserted that it has lost customers, revenues, investor confidence, and the devaluation of its own investment in a "permit and regulation compliant plant."  (Docket Entry No. 30 at ¶ 81).  In its response to USOR's motion to dismiss, Downstream appears to ask for injunctive relief and attorney's fees, but the only request for an injunction in the proposed third amended complaint – directed to the now-withdrawn USOR permit

application – is moot.  There is no indication how an injunction directed at USOR's alleged discharge of untreated or hazardous waste would specifically or directly redress the harm Downstream alleged, that it has lost customers and revenues because of lower prices charged by USOR.  Downstream has not met its burden of showing that the injury of which it complains will be redressed by relief it seeks.

Downstream lacks standing to bring suit under the Clean Water Act.  To the extent Downstream moves for leave to amend to assert such a claim as either a predicate act under RICO or as a separate cause of action, it is denied as futile.[6]

## III.   Sanctions

USOR has moved for sanctions against Downstream under Federal Rule of Civil Procedure 11.  (Docket Entry No. 42).  USOR argues that Downstream has made false accusations against it and made baseless arguments to this court.  (*Id.*).  This court does not find Rule 11 sanctions appropriate on the present record.

## IV.   Conclusion

---

[6] To allege a claim under the Clean Water Act, a plaintiff must allege that a defendant has discharged pollutants into navigable waters.  *See Friends of the Earth*, 95 F.3d at 360–61.  In *Rapanos v. United States*, 126 S.Ct. 2208 (2006), the Court divided over the appropriate limit to what constituted "navigable waters" under the Act in the context of the Corps of Engineers' regulation over wetlands.  Four justices would have limited the Clean Water Act's protection of "waters of the United States" to those bodies of water that are "relatively permanent, standing or continuously flowing" bodies of water that are described in ordinary parlance as "streams[,] . . . oceans, rivers, [and] lakes," and do not include channels through which water flows intermittently or ephemerally, or channels that periodically provide drainage for rainfall." 126 S.Ct. at 2225.  A fifth justice concurred in remanding but rejected this limited test, instead stating that the proper approach is a "significant nexus" test to be developed by the regulating agencies and in the meantime, to require a "case-by-case" review by the Corps when it "seeks to regulate wetlands based on adjacency to nonnavigable tributaries."  *Id.* at 2248 (Kennedy, J., concurring).  This court does not address whether Downstream has alleged that the illegal waste dumping and disposal activities occurred in navigable waters.

USOR's and Genssler's motion to dismiss is granted as to Downstream's claims under RICO, the Clean Water Act, and fraud.  Downstream's motion for leave to file its proposed third amended complaint is denied as futile with respect to these claims. Downstream has previously dismissed all its claims against Gulf Coast and all other claims against USOR and Genssler except false advertising.  Downstream has previously dismissed all its claims against Wise, Cook, and Gregory & Cook Construction.

USOR's motion to dismiss the remaining claim, the federal-law false advertising claim, will be treated as a motion for summary judgment.  No later than **July 17, 2006**, USOR must supplement the record with affidavits or other submissions relating to this statutory false advertising claim.  Downstream must respond no later than **July 31, 2006.** USOR's motion for sanctions is denied at this time.

SIGNED on July 5, 2006, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge

24